**Electronically Filed
Supreme Court
SCWC-28958
27-MAR-2015
10:24 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

C. BREWER AND COMPANY, LTD., Respondent/Plaintiff-Appellant,

vs.

MARINE INDEMNITY INSURANCE COMPANY OF AMERICA;
FIREMAN'S FUND INSURANCE COMPANY OF HAWAII; and
JAMES RIVER INSURANCE COMPANY,
Petitioners/Defendants-Appellees,

and

INDUSTRIAL INDEMNITY COMPANY; INDUSTRIAL INSURANCE
COMPANY OF HAWAII, LTD.; NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH; UNITED STATES FIRE INSURANCE COMPANY;
LIBERTY MUTUAL INSURANCE COMPANY; TIG INSURANCE COMPANY;
COLUMBIA CASUALTY COMPANY; THE HOME INSURANCE COMPANY;
RELIANCE INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY;
CIGNA PROPERTY AND CASUALTY INSURANCE CO.; PACIFIC EMPLOYERS
INSURANCE CO., INC.; SCOTTSDALE INSURANCE COMPANY;
FIRST STATE INSURANCE CO.; KILAUEA IRRIGATION CO., INC.;
KEHALANI HOLDINGS CO., INC.; STATE OF HAWAI'I; and
HAWAII INSURANCE GUARANTY ASSOCIATION;
Respondents/Defendants-Appellees,

and

STATE OF HAWAI'I,
Respondent/Third-Party Plaintiff-Cross-Appellant,

vs.

MARSH USA, INC., Respondent/Third-Party Defendants-Appellees,

and

KEHALANI HOLDINGS COMPANY, INC.,
Respondent/Third-Party Plaintiff-Cross-Appellant,

vs.

UNITED NATIONAL INSURANCE COMPANY; COMMONWEALTH INSURANCE
COMPANY; ALEXANDER HOWDEN LIMITED; INTEGRITY INSURANCE
COMPANY; HAWAIIAN INSURANCE & GUARANTY COMPANY, LIMITED;
HOLLAND-AMERICA; INTERNATIONAL INSURANCE COMPANY;
TRADEWIND INSURANCE COMPANY, LIMITED; and
ISLAND INSURANCE COMPANY, LIMITED,
Respondent/Third-Party Defendants-Appellees.

_____

SCWC-28958

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 28958; CIV. NO. 06-1-0140)

MARCH 27, 2015

NAKAYAMA, ACTING C.J., McKENNA, POLLACK, AND WILSON, JJ., AND
CIRCUIT JUDGE KUBO, IN PLACE OF RECKTENWALD, C.J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

**I.    Introduction**

On March 14, 2006, a large portion of the Kaloko Dam
("Dam") in Kīlauea, Kauaʻi collapsed, releasing over three
million gallons of water, resulting in the loss of seven lives
as well as extensive property damage ("Dam Breach").  At the
time of the Dam Breach, James Pflueger ("Pflueger") owned the
Dam.  Pflueger filed a lawsuit in the Circuit Court of the First
Circuit seeking damages and indemnification from C. Brewer and
Company, Ltd. ("C. Brewer") for claims brought against him

arising out of the Dam Breach.  Pflueger v. State, Civ. No. 06–1-1391 ("Pflueger complaint").  According to the Pflueger complaint, C. Brewer sold him property, including the Dam, while aware of the Dam's questionable structural stability.  C. Brewer then filed a complaint in the Circuit Court of the Fifth Circuit ("circuit court") seeking rulings regarding obligations owed by seventeen insurance companies that had issued various insurance policies to C. Brewer covering different time periods.

This opinion addresses issues arising out of the policy issued to C. Brewer by James River Insurance Company ("James River"), a commercial general liability ("CGL") policy[1] in effect at the time of the Dam Breach.  The circuit court granted summary judgment in favor of James River, ruling that a "Designated Premises Endorsement" ("DPE"), which purported to limit coverage to specific premises listed in a separate "Schedule of Locations" ("Schedule"), precluded coverage.  The circuit court ruled that James River was therefore not required to defend or indemnify C. Brewer against Pflueger's claims.  On

---

[1]     CGL policies are "third-party" policies, which "provide[] coverage for the insured's liability to another . . . wherein the carrier generally assumes a contractual duty to pay judgments recovered against the insured arising from the insured's negligence."  Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, 76 Hawai'i 277, 289, 875 P.2d 894, 906 (1994).  Generally, a CGL policy "is not limited to accidents on the business premises, but rather has at least nationwide coverage."  3 New Appleman Insurance Law Practice Guide § 30.04[3][a] (2015).  See also 9A Couch on Insurance § 129:2 ("Commercial general liability policies are not . . . strictly confined to operations performed on the insured's business premises.").

appeal, the Intermediate Court of Appeals ("ICA") concluded that the parties' intent as to the DPE was ambiguous, and remanded the case for a determination of the parties' intent regarding the DPE.

James River raised the following question on certiorari:

> Did the ICA gravely err when it reversed the circuit court's finding that the "Limitation of Coverage to Designated Premises Endorsement" in the James River liability policy issued to C. Brewer, considered in the context of the entire policy, unambiguously precludes coverage as a matter of law, for the bodily injury and property damage claims stated against C. Brewer in underlying actions arising from the March 2006 failure of the Ka Loko Dam and Reservoir.

We hold that the James River DPE provides coverage for injury and damage that occurs on premises not listed in the Schedule if the injury or damage arises out of the ownership, maintenance or use of a designated premises.  In determining whether an injury or damage arose out of the use of a designated premises, we adopt the legal interpretation of "arising out of" in American Guarantee and Liability Insurance Co. v. 1906 Co., 129 F.3d 802 (5th Cir. 1997):  "The phrase 'arising out of' is ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'  In the insurance context, this phrase is often interpreted to require a causal connection between the injuries alleged and the objects made subject to the phrase."  129 F.3d at 807.  We therefore hold that the DPE unambiguously provides coverage for negligence

claims against C. Brewer arising out of the use of designated premises.

We further hold that language in a designated premises endorsement "must be clear and unequivocal[]" to convert a CGL policy to a premises liability policy[2] that limits coverage to injuries occurring on specific premises. American Empire Surplus Lines Insurance Co. v. Chabad House of North Dade, Inc., 771 F. Supp. 2d 1336, 1343 (S.D. Fla. 2011), aff'd, 450 F. App'x 792 (11th Cir. 2011). In this case, the DPE is not sufficiently "clear and unequivocal" to limit coverage to injuries occurring on the designated premises, as argued by James River. Thus, the DPE does not limit liability to injury and damage occurring on designated premises.

Therefore, the circuit court erred in granting summary judgment in favor of James River, and the ICA erred in concluding that it is necessary to determine the parties' intent

---

[2]    A premises liability policy is a type of general liability insurance that limits coverage to specific premises identified in the policy. See 3 New Appleman Insurance Law Practice Guide § 30.04[3][a] (2015) ("Some types of general liability insurance, however, are premises-specific. The most common such policies are Garage policies and policies of Owners', Landlords' and Tenants' ("OLT") insurance.") A premises liability policy is "[a] very common form of liability insurance [] which insures the owner, occupier, or operator of real property against liability incident to his ownership or use of the premises." Am. Guarantee, 129 F.3d at 808 (quoting 11 Couch on Ins. § 44:379 at 551 (2d. ed. 1982)). The purpose of a premises liability policy "is simply to protect against liability arising from the condition or use of the building as a building[,] [and is] distinguish[able] from insurance against liability arising from the nature of the enterprise or activity conducted" in the building itself. Id. (quoting 11 Couch on Ins. § 44:379 at 551).

as to the effect of the DPE.  Accordingly, we affirm in part and vacate in part the ICA's October 22, 2013 judgment, and instruct the circuit court to further proceed consistent with this opinion.

## II.  Background

### A.    Kaloko Dam and Irrigation System

The Kaloko Irrigation System ("System") was constructed in the late 1800s by Kilauea Sugar Company ("KSC"), a C. Brewer subsidiary, to collect and distribute water to irrigate sugar cane fields in Kīlauea, Kaua‘i.  The System relied on rain water from a State-owned mauka[3] watershed, which was funneled through ditches, flumes, and gates into the Kaloko Ditch, then into the Kaloko Reservoir ("Reservoir").  The water was held in the Reservoir by the earthen Dam, and then distributed through flumes, ditches, and pipes to sugar cane fields makai[4] of the Reservoir.

KSC exited the sugar cane industry in about 1970 and stopped maintaining the System, which then fell into disrepair. In 1971, C. Brewer began to sell off some of its lands,

---

[3]    In this context, mauka connotes inland or toward the mountains. See Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary 242, 485 (1986).

[4]    In this context, makai means ocean.  See Pukui & Elbert, supra, at 225.

specifically those makai of the Dam, which were later developed for agricultural or residential uses.

In 1977, the State of Hawai'i ("State") and C. Brewer entered into an agreement that required C. Brewer to, among other things, restore and expand the System.[5]  C. Brewer formed the Kilauea Irrigation Company ("KIC") to satisfy its obligations to the State, revitalize the System, and sell System water to local farmers for irrigation.

In February 1987, KIC entered into a Water Rights Agreement ("WRA") with an owner of property adjoining C. Brewer's land.  The WRA made KIC solely responsible for operating, inspecting, maintaining, and repairing the System and Dam.  In 1987, C. Brewer sold the land under the Reservoir to Pflueger.

B.    Circuit Court Proceedings

James River's CGL policy was the only policy in effect on the date of the Dam Breach.  Before filing suit, C. Brewer tendered the defense of the Pflueger complaint to James River, which refused to defend.

---

[5]    In exchange, the State promised to end its condemnation proceedings over certain C. Brewer agricultural parcels in Kilauea.

C. Brewer's second amended complaint ("complaint")[6] noted that C. Brewer was a named insured under James River policy number 00013398-0, policy period 12/15/2005 to 12/15/2006. According to the complaint, the insuring agreement under the policy stated:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . This insurance applies to "bodily injury" and "property damage" only if: (2) The "bodily injury" or "property damage" occurs during the policy period[.]

Accordingly, C. Brewer alleged that the James River policy covered claims against it related to the Dam Breach. C. Brewer also asserted that James River was obligated to defend and indemnify it because none of the policy's exclusions applied.

James River moved for summary judgment, arguing <u>inter alia</u>, that various endorsements and exclusions in its policy precluded coverage for damages from the Dam Breach. In particular, James River argued that the policy's DPE limited coverage to liability arising out of the ownership, maintenance,

---

[6]     C. Brewer's complaint alleged the following regarding the Pflueger complaint:

> 40.   The Pflueger Complaint alleges that Plaintiff's negligent acts and/or omissions (i.e. failure to inspect, maintain, and/or repair the dam) caused continuous, incremental and indivisible physical injury to tangible property - Pflueger's dam . . . .
> 41. On January 19, 2007, plaintiffs in the Pflueger suit stated in interrogatory responses that the failure of Plaintiff herein failed to maintain the Dam from before 1982 to March 14, 2006 . . . .

or use of specifically identified premises.  The Dam site was not listed as a designated premises.

The circuit court granted summary judgment in favor of James River based upon the DPE, concluding that it unambiguously precluded coverage for claims against C. Brewer arising out of the Dam Breach, and that, therefore, James River was not obligated to provide a defense or coverage to C. Brewer.  In granting summary judgment, the circuit court concluded that the James River policy contained no ambiguous terms, and that C. Brewer's assertion of coverage for claims arising out of the "use" of its corporate headquarters exceeded the bounds of the plain and ordinary meaning of the policy terms.

## C.   Appeal to the ICA

On appeal, the ICA noted:

> The key question is whether the language 'arising out of the ownership, maintenance, and use of the [designated] premises' can be interpreted to encompass the use of C. Brewer's business headquarters (one of the designated premises) to make negligent business decisions that caused personal injury and property damage outside of the designated premises.

C. Brewer & Co. v. Industrial Indem. Co, No. 28958 (App. Aug. 7, 2013) (mem.), at 34.

The ICA concluded that the parties' conflicting interpretations of the DPE were reasonable, and held the DPE ambiguous as being reasonably susceptible to more than one meaning.  C. Brewer, mem. op. at 36 (citing Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai'i 36, 45, 305 P.3d 452,

461 (2013)) ("A contract is ambiguous when its terms are reasonably susceptible to more than one meaning.").  In so concluding, the ICA explained:

> The use of the language "arising out of the ownership, maintenance, and use of the premises" suggests that the parties may have intended to restrict coverage to injuries and damages occurring on the designated premises.  However, the designated premises endorsement applies not only to bodily injury and property damage, but also to "personal and advertising injury" arising out of the use of the designated premises.

Id.  The ICA concluded that the inclusion of "advertising injury" in the DPE suggested that the parties may have intended to include coverage for negligent decisions made at designated premises that results in injury and damage elsewhere.  The ICA reasoned that while decisions made at C. Brewer's corporate headquarters would likely be the cause of any advertising injury, the resulting injury would occur off designated premises.  Id.

Accordingly, the ICA held that the James River policy was ambiguous as to whether the DPE barred coverage, and thus raised a genuine issue of material fact with respect to the parties' intent.[7]  C. Brewer, mem. op. at 32, 37.  The ICA

---

[7]  In further support of the conclusion that a genuine issue of fact with respect to the parties' intent existed, the ICA stated in a footnote that there was "a suggestion in James River's arguments, based on extrinsic circumstances, that C. Brewer was winding up its corporate affairs and thus intended to obtain a different kind of CGL policy -- one that would require a lower premium but provide more limited coverage."  C. Brewer, mem. op. at 37 n.20.

therefore vacated the circuit court's Final Judgment and remanded to the circuit court.  C. Brewer, mem. op. at 43.

### III.  Standard of Review

This court reviews a circuit court's grant or denial of summary judgment de novo under the same standard applied by the circuit court.  Dairy Rd. Partners v. Island Ins. Co., 92 Hawai'i 398, 411, 992 P.2d 93, 106 (2000).  "[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Id. (citation omitted).

This court must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.  Maguire v. Hilton Hotels Corp., 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1997).

### IV.  Discussion

**A.   The Underlying Lawsuit**

The Pflueger complaint alleged that C. Brewer was negligent with respect to (1) its obligation to maintain the System and (2) its entrustment of the maintenance and operation of the System to KIC, as follows:

> 92. Brewer, independently and through its wholly-owned subsidiary, KIC, owed a duty of reasonable care to Plaintiffs and others to properly operate, inspect, repair

-11-

and/or maintain the System, including the Dam and Reservoir.

93. Brewer, independently and through its wholly-owned subsidiary, KIC, breached its duty to properly operate, inspect, repair and/or maintain the System, including the Dam, its appurtenant structures and/or the Reservoir.

. . .

96. Brewer owed a duty of reasonable care to Plaintiffs and others to ensure the proper operation, inspection, repair and/or maintenance of the System, including the Dam and Reservoir.

97. After its formation of KIC, Brewer knew or reasonably should have foreseen that KIC was not competent to operate and maintain the System in general and the Dam and Reservoir in particular.

98. Brewer knew or should have known that, because of its lack of expertise, knowledge and/or resources, KIC would operate, inspect, repair and/or maintain the System in a manner involving unreasonable risk to others.

99. Brewer was negligent in its entrustment of the System to KIC.

100. Brewer breached its duty to Plaintiffs and others by negligently entrusting KIC with the responsibility to operate, inspect, repair and/or maintain the System, including the Reservoir and Dam.

Therefore, the Pflueger complaint alleged that C. Brewer was obligated to pay Pflueger damages resulting from C. Brewer's negligent acts or omissions, including its negligent entrustment of the system to KIC and its alleged failure to maintain the System, warn about the System's unsafe conditions, and adequately capitalize its land operations and the companies responsible for maintaining and repairing the Dam, which resulted in injury and damage due to the Dam Breach.

James River's obligation to indemnify C. Brewer for claims asserted against it by the Pflueger complaint depends upon whether the policy covers injury and damage occurring on undesignated premises that results from C. Brewer's negligent acts or omissions arising from the use of designated premises.

James River's position is that the DPE precluded any possibility that it would be obligated to indemnify C. Brewer.

**B.    Construction of the Designated Premises Endorsement**

We note a few general principles of law that will guide us in interpreting the policy at issue.  First, "insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended."  Dairy Rd. Partners v. Island Ins. Co., 92 Hawaiʻi 398, 411, 992 P.2d 93, 106 (2000) (brackets and citation omitted).  Thus, policy language "must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer."  92 Hawaiʻi at 412, 992 P.2d at 107 (alteration in original).  Second, pursuant to Hawaiʻi Revised Statutes § 431:10-237 (1993):  "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy."  Moreover, "[b]ecause an insurer's duty to defend its insured is contractual in nature, we must look to the language of the policy involved to determine the scope of that duty."  Sentinel,

76 Hawaiʻi at 287, 875 P.2d at 904. "[W]henever the insurer relies on an exclusionary clause of a policy as a defense to liability, it has the burden of proving facts which bring the case within the exclusion." Quinn v. Wilshire Ins. Co., 53 Haw. 19, 21, 486 P.2d 59, 60 (1971). In addition, any ambiguity in an exclusionary clause is construed in favor of the insured and "strictly construed against the insurer." Retherford v. Kama, 52 Haw. 91, 470 P.2d 517 (1970).

The DPE, titled, "Limitation of Coverage to Designated Premises," states: "This insurance applies only to 'bodily injury', 'property damage', or 'personal and advertising injury' arising out of the ownership, maintenance or use of the premises shown in the above Schedule." The DPE lists "Locations 1-3." The parties are in agreement that "Locations 1-3" includes C. Brewer's corporate headquarters at 311 Pacific Street, but not the Dam site.

James River and C. Brewer present conflicting interpretations of the DPE. James River argues that the DPE unambiguously limits coverage under the policy to liability for injury and damage on premises listed in the Schedule, and thus it has no obligation to defend or indemnify C. Brewer against the Pflueger lawsuit because the Dam site is not listed. C. Brewer argues that the DPE is ambiguous as to whether injury and damage "arising out of" the "use" of listed premises is covered,

contending that the "arising out of" language in the DPE requires broad construction in its favor.

We have held that "[a] contract is ambiguous when its terms are reasonably susceptible to more than one meaning." Hawaiian Ass'n of Seventh-Day Adventist v. Wong, 130 Hawai'i 36, 45, 305 P.3d 452, 461 (2013). We therefore begin by analyzing whether the positions advanced by the parties are reasonable interpretations of the policy's language.

James River cites to Union American Insurance Co. v. Haitian Refugee Center/Sant Refijie Ayisyin, Inc., 858 So.2d 1076 (Fla. Dist. Ct. App. 2003), in support of its argument that the DPE must be construed to limit liability to designated premises. In Union American, a Haitian Refugee Center ("Center") allegedly failed to provide adequate security at a street rally it sponsored located far from and unrelated to the Center's headquarters, the designated premises, which led to the shooting of an individual at the rally by another individual in the crowd. 858 So.2d at 1077. The policy's designated premises endorsement limited coverage to "bodily injury . . . arising out of [t]he ownership, maintenance or use of the premises shown in the [s]chedule and operations necessary or incidental to those premises[.]" Id. (first and second bracket in original; third bracket added) (quoting insurance policy at issue). The District Court of Appeal of Florida for the Third District

-15-

("appeals court") reversed the lower court's holding that the policy provided coverage, concluding that the designated premises endorsement effectively converted the CGL policy into a premises liability policy despite the words "commercial lines policy" on the policy's cover sheet.  858 So.2d at 1078 n.1, 1079 (reversing judgment).  The appeals court explained that providing coverage on the ground that the event was an operation necessary or incidental to the Center's business involved a judicial rewriting of the policy by substituting "business" for the policy word "premises."  858 So.2d at 1078.  The appeals court stated:  "This is a process in which we may not engage."  Id.

Union American concerned a wrongful death action based on an alleged failure to provide adequate security, while this case involves damages for C. Brewer's alleged negligent entrustment of the System to KIC and its alleged failure to disclose unsafe conditions, adequately capitalize KIC, or maintain the System.  In addition, the injury in Union American occurred in a manner unrelated to the Center.  858 So.2d at 1077.

In this case, however, the injury and damage arguably relate to C. Brewer's "use" of its corporate headquarters to make negligent business decisions.  Union American is therefore distinguishable.

-16-

C. Brewer contends that the policy provides coverage for injury and damage arising out of its "use" of its corporate headquarters to make negligent corporate decisions even though the resulting damage happened at the unlisted Dam site. In support, C. Brewer relies on American Guarantee and Liability Insurance Co. v. 1906 Co., 129 F.3d 802 (5th Cir. 1997) (applying Mississippi state law), a case in which the court construed a designated premises endorsement with language similar to the James River DPE, to include coverage for injuries and damages occurring on a premises not listed in the endorsement.

In American Guarantee, an insurer sought a judgment that the CGL policy it sold to a Coca-Cola Bottling Company ("Coke Company") afforded no coverage or defense for injuries arising out of a photography studio, wholly-owned and operated as a division of the Coke Company, in which the Coke Company chief executive officer's (CEO) son, also an employee, surreptitiously videotaped female customers changing their clothes. 129 F.3d at 804. The designated premises endorsement at issue limited coverage to "'bodily injury,' 'property damage,' 'personal injury,' 'advertising injury' and medical expenses arising out of . . . [t]he ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises[.]" 129 F.3d at 806

(quoting insurance policy at issue). The studio, located a mile away from the Coke Company, was not a designated premises.

The Fifth Circuit held that the designated premises endorsement did not preclude coverage for negligence claims arising out of the use of the Coke Company headquarters, a designated premises, regarding supervisory actions over the studio and the CEO's son. 129 F.3d at 808. The Fifth Circuit concluded that the designated premises endorsement unambiguously covered injuries occurring at uncovered premises if a causal connection between the injuries and "use" of a designated premises existed. See 129 F.3d at 807 ("[T]he phrase 'arising out of' the 'use' of the designated premises requires that there be a causal connection between the injuries . . . and the designated premises . . . ."). In construing a causal connection, the Fifth Circuit opined as follows: "The phrase 'arising out of' is ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.' In the insurance context, this phrase is often interpreted to require a causal connection between the injuries alleged and the objects made subject to the phrase." Id. (internal citation omitted).

The Fifth Circuit reasoned that the studio was owned and operated as a division of the Coke Company, the studio and Coke Company shared the same general checking account, employees

of the studio were considered Coke Company employees, and all major business decisions concerning the studio, from the purchase of the equipment to the scope and ultimate termination of the business, were made at the Coke Company's headquarters, a designated premises.  129 F.3d at 807-08.  The Fifth Circuit held that "[u]nder the circumstances, a factfinder could find a causal connection between [the Coke Company] and [the CEO's] supervisory activities, the operation of the designated premises, and the injuries that resulted from [the CEO's son's] intentional and tortious actions at [the studio]."  129 F.3d at 808.

Similarly, in this case, the System was owned and operated by KIC, a C. Brewer subsidiary, KIC's employees were considered employees of C. Brewer, and all major business decisions concerning the System, including the alleged failure to capitalize KIC, the entrance into various agreements to maintain the System, and the eventual sale of the land underlying the Reservoir, were apparently made at C. Brewer's corporate headquarters.  Therefore, a causal connection could possibly be found between C. Brewer and its entrustment of the System to KIC, the operation of the designated premises, and the injuries that resulted from C. Brewer's allegedly negligent corporate decisions.

In addition, by relying on Union American, James River seeks to rewrite the term "arising out of" to limit liability to injury and damage occurring on designated premises.  Such a construction of the DPE would effectively convert the James River policy from a CGL policy to a premises liability policy that limits coverage to certain premises.  James River's argument contradicts the policy, which specifically states that it is a "commercial general liability" policy.  In addition, such a construction contravenes general principles of insurance construction, which provide that policy language "must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer."  Dairy Rd. Partners, 92 Hawai'i at 412, 992 P.2d at 107 (alteration in original).

In our view, American Empire Surplus Lines Insurance Co. v. Chabad House of North Dade, Inc., 771 F. Supp. 2d 1336 (S.D. Fla. 2011), correctly analyzes the requirements for converting a CGL policy to a premises liability policy.  The policy at issue in Chabad House is similar to the James River policy.  Chabad House involved a "commercial general liability" policy that covered injury and damage occurring anywhere in the "coverage territory," defined in the policy as encompassing, at minimum, the United States, Canada, and Puerto Rico, and also

contained a similarly worded designated premises endorsement.[8] 771 F. Supp. 2d at 1339, 1343.

Citing to American Guarantee, in which the designated premises were specifically incorporated into the policy on the declarations page so as to put the insured on notice that coverage was limited to certain premises, the Chabad House court held that language in a DPE used to convert a CGL to a premises liability policy "must be clear and unequivocal." 771 F. Supp. 2d at 1343. We likewise hold that a DPE "must be clear and unequivocal[]" to convert a CGL policy to a premises liability policy in order to effectively limit coverage to injury or damage that occurs on undesignated premises. Id.

In this case, the James River DPE does not clearly convert the policy into a premises liability policy. The DPE is similarly incorporated by reference into the policy on the declarations page; however, the declarations page does not list the designated premises. Therefore, the DPE is not sufficiently clear and unequivocal to put the insured on notice and convert

---

[8] The designated premises endorsement in Chabad House states: "This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part." 771 F. Supp. 2d at 1343 (quoting insurance policy at issue). It limits coverage to "'bodily injury', 'property damage', 'personal and advertising injury' and medical expenses arising out of: (1) The ownership, maintenance or use of the premises shown in the Schedule . . . and operations necessary or incidental to those premises." Id. (quoting insurance policy at issue).

the policy.[9]  Accordingly, we reject James River's argument to construe the DPE as limiting coverage to injury and damage occurring on designated premises.  See Dairy Rd. Partners, 92 Hawaiʻi at 412, 992 P.2d at 107 (holding that policy language "must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer.").

In further support of its position, C. Brewer contends that the inclusion of "personal and advertising injury" in the DPE "suggests that the parties may have intended to include coverage for negligent decisions made at a designated premises that resulted in injury and damages elsewhere." (quoting C. Brewer, mem. op. at 36).  C. Brewer also notes that Chabad House found that the policy's broad coverage territory, which included the United States, Canada, Puerto Rico, and, under certain circumstances, other parts of the world, contradicted the designated premises endorsement.  James River asserts that C.

---

[9]  We note that although the parties are in agreement that the Dam site was not a listed premises, the DPE does not clearly define which premises correspond to "Locations 1-3."  The declarations page contains a section titled, "Endorsements," which refers the reader to a list of forms and endorsements in "attached schedule A."  "Schedule A" is essentially a table of contents, and includes the DPE.

The DPE contains a section titled, "Schedule," which reads "Premises: Locations 1-3" with no reference directing the reader on where to find the list of locations.  To find the "Schedule of Locations," the reader must refer to a form titled, "Policy Changes," also listed on "Schedule A." The "Schedule of Locations" section contained on the "Policy Changes" page lists three premises, including 311 Pacific Street, but also lists a number of vacant parcels identified by TMK number.

Brewer's interpretation is overly broad and renders the "arising out of" language meaningless.

As the ICA reasoned, decisions made at C. Brewer's corporate headquarters would likely be the cause of any advertising injury; however, the resulting injury would not occur on designated premises.  In addition, the James River policy's broad coverage territory similarly encompasses the United States, Canada, Puerto Rico, and, under certain circumstances, other parts of the world.[10]  Therefore, C. Brewer's arguments further support its interpretation of the DPE.

## C.    Classification Limitation Endorsement

James River also argues that its classification limitation endorsement limits coverage only to "those operations specified . . . under the 'description of operations' or

---

[10]     The James River policy defines "coverage territory" to mean:

> a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
> b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or
> c. All other parts of the world if the injury or damage arises out of:
>> (1) Goods or products made or sold by you in the territory described in a. above;
>> (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or
>> (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication . . . .

'classification' on the declarations of the policy."  As C. Brewer emphasizes, the declarations page does not contain a "Description of Operations," but rather, a "Description of Business" in which the phrase "Real Estate Owners" was inserted. James River maintains that C. Brewer was not the owner of any real estate at the time of the accident and therefore, the classification limitation endorsement affirms that the policy, read as a whole, was clearly intended to provide coverage only for C. Brewer's liability as the owner of real estate specifically listed in the Schedule.  C. Brewer maintains that the classification limitation endorsement does not limit coverage to "land, owned or otherwise[,]" and that the phrase "Real Estate Owners" created ambiguity.

The ICA concluded that the classification limitation endorsement did not resolve the ambiguity regarding coverage because the James River policy did not define "Real Estate Owners," and the allegations in the Pflueger lawsuit "arguably implicated C. Brewer's activities and operations as a real estate owner, such as [its alleged] failure[s] to warn about the unsafe condition of the Kaloko Dam and . . . to adequately capitalize its land operations and companies responsible for maintaining and repairing the Kaloko Dam."  C. Brewer, mem. op. at 38.

Contrary to James River's assertions, the classification limitation endorsement supports C. Brewer's argument that the DPE does not preclude coverage for bodily injury and property damage on premises not listed in the Schedule. The limitation specifically states: "The coverage provided by this policy applies only to those operations specified in the applications(s) [sic] for insurance on files with the Company and described under the 'description of operations' or 'classification on the declaration of the policy.'" (emphasis added). Thus, the policy specifically applies to "operations" specified in the application, and not the specified "premises." Moreover, it appears that C. Brewer was leasing the 311 Pacific Street property. Therefore, according to James River's argument regarding the classification limitation endorsement, injury and damage that occur on premises listed in the Schedule would be excluded from coverage because C. Brewer did not "own" the property listed. James River's argument is illogical and would require this court to rewrite the terms of the policy to ignore the premises specifically listed in the Schedule that C. Brewer did not own, despite their clear inclusion in the policy.

Accordingly, the classification limitation endorsement also supports C. Brewer's position that the policy was meant to cover injury and damage occurring on premises not listed in the

Schedule.  Any ambiguities in this endorsement must also be construed against James River.  See 92 Hawai'i at 412, 992 P.2d at 107.

## D.   Additional Exclusions

The circuit court granted James River's motion for summary judgment based on the erroneous conclusion that the DPE excluded coverage for injury and damage occurring on premises not listed in the DPE Schedule.  Therefore, the circuit court did not analyze the James River policy in its entirety to determine whether any other exclusions or endorsements James River asserted in its motion for summary judgment applied to preclude coverage under the James River policy.[11]  We decline to address for the first time on certiorari exclusions that the circuit court did not reach.

## V.   Conclusion

Adopting American Guarantee, we hold that the phrase "'arising out of' the 'use' of the designated premises requires that there be a causal connection between the injuries . . . and the designated premises[.]"  129 F.3d at 807.  We further hold that the DPE unambiguously provides coverage for "bodily injury"

---

[11]    James River included a number of exclusions in its motion for summary judgment that allegedly preclude coverage, including a "subsidence" exclusion, a provision limiting coverage to C. Brewer (and thus, precluding coverage for KIC), an irrigation and earth movement exclusion, and a provision excluding coverage for misrepresentation, fraud, and breach of the covenant of good faith and fair dealing.

and "property damage" that bears a causal connection to the "use" of designated premises, regardless of where the injury or damage occurs.  Applying American Guarantee to the facts of this case, we hold that the DPE unambiguously provides coverage for negligence claims arising out of the use of C. Brewer's corporate headquarters.[12]  Thus, the parties' intent as to the DPE is not at issue.

We therefore affirm in part and vacate in part the ICA's October 22, 2013 judgment.  We affirm that portion of the judgment to the extent that it vacated the circuit court's December 21, 2007 Final Judgment.  We vacate in part that portion of the judgment to the extent that it instructed the

_____

[12]     Although the duty to defend was not raised on certiorari, it was raised in the circuit court and the ICA.  We note that "the duty to defend 'rests primarily on the possibility that coverage exists.  This possibility may be remote, but if it exists[,] the [insurer] owes the insured a defense.'"  Sentinel Ins. Co. v. First Ins. Co. of Hawaiʻi, 76 Hawaiʻi 277, 287, 875 P.2d 894, 904 (1994) (alteration in original) (citations omitted).  Thus, the broader duty to defend rests on the possibility that the insured would be entitled to indemnification under the policy.  See id. ("In order to determine whether [the insurer] had a duty to defend . . . , we must examine whether the underlying action raised the possibility that the [insured] would be entitled to indemnification under any of the policies issued by [the insurer].").  "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured[.]"  Id. (alteration in original) (citations omitted).

circuit court on remand to determine the parties' intent regarding the DPE. On remand, we instruct the circuit court to proceed consistent with this opinion.

Keith K. Hiraoka,                         /s/ Paula A. Nakayama
Jodie D. Roeca,
Robert J. Romero,                       /s/ Sabrina S. McKenna
<u>pro hac vice</u> and
Maria S. Quintero,                     /s/ Richard W. Pollack
<u>pro hac vice</u>, for
petitioner/defendant-                /s/ Michael D. Wilson
appellee James River
Insurance Company                     /s/ Edward H. Kubo, Jr.



Kenneth R. Kupchak,
Tred R. Eyerly, and
Mark M. Murakami
for respondent/plaintiff-
appellant C. Brewer
and Company, Ltd.