**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000055
23-JUN-2026
08:30 AM
Dkt. 76 MO**

NOS. CAAP-24-0000294, CAAP-24-0000055,
CAAP-24-0000351 and CAAP-24-0000420

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

**CAAP-24-0000294**
DR. ALAN NOMURA, as Trustee of the Alan K. Nomura Revocable
Living Trust Dated March 13, 1997, Plaintiff-Appellant,
v.
ASSOCIATION OF APARTMENT OWNERS OF IOLANI COURT PLAZA; VALENTIN
SEMENOV; INESSA SEMENOV; BURT LOUIS JOHNSON; EVELYN GONG
JOHNSON, Defendants-Appellees,
and
JOHN DOES 1-100; JANE DOES 1-100; DOE CORPORATIONS 1-100; DOE
PARTNERSHIPS 1-100; DOE NON-PROFIT CORPORATIONS 1-100; and DOE
GOVERNMENTAL ENTITIES 1-100, Defendants

**CAAP-24-0000055**
DR. ALAN NOMURA, as Trustee of the Alan K. Nomura Revocable
Living Trust Dated March 13, 1997, Plaintiff-Appellant,
v.
ASSOCIATION OF APARTMENT OWNERS OF IOLANI COURT PLAZA; VALENTIN
SEMENOV; INESSA SEMENOV; BURT LOUIS JOHNSON; EVELYN GONG
JOHNSON, Defendants-Appellees,
and
JOHN DOES 1-100; JANE DOES 1-100; DOE CORPORATIONS 1-100; DOE
PARTNERSHIPS 1-100; DOE NON-PROFIT CORPORATIONS 1-100; and DOE
GOVERNMENTAL ENTITIES 1-100, Defendants

**CAAP-24-0000351**
DR. ALAN NOMURA, as Trustee of the Alan K. Nomura Revocable
Living Trust Dated March 13, 1997, Plaintiff-Appellant,
v.
ASSOCIATION OF APARTMENT OWNERS OF IOLANI COURT PLAZA; VALENTIN
SEMENOV; INESSA SEMENOV; BURT LOUIS JOHNSON; EVELYN GONG
JOHNSON, Defendants-Appellees,

and

JOHN DOES 1-100; JANE DOES 1-100; DOE CORPORATIONS 1-100; DOE PARTNERSHIPS 1-100; DOE NON-PROFIT CORPORATIONS 1-100; and DOE GOVERNMENTAL ENTITIES 1-100, Defendants

and

**CAAP-24-0000420**

DR. ALAN NOMURA, as Trustee of the Alan K. Nomura Revocable Living Trust Dated March 13, 1997, Plaintiff-Appellant,
v.
ASSOCIATION OF APARTMENT OWNERS OF IOLANI COURT PLAZA; VALENTIN SEMENOV; INESSA SEMENOV; BURT LOUIS JOHNSON; EVELYN GONG JOHNSON, Defendants-Appellees,
and
JOHN DOES 1-100; JANE DOES 1-100; DOE CORPORATIONS 1-100; DOE PARTNERSHIPS 1-100; DOE NON-PROFIT CORPORATIONS 1-100; and DOE GOVERNMENTAL ENTITIES 1-100, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CCV-21-0000982)


**MEMORANDUM OPINION**
(By: Nakasone, Chief Judge, Leonard and Guidry, JJ.)

The consolidated case nos. CAAP-24-0000055, CAAP-24-0000294, CAAP-24-0000351, and CAAP-24-0000420, arise out of Plaintiff-Appellant Dr. Alan Nomura, as Trustee of the Alan K. Nomura Revocable Living Trust Dated March 13, 1997's (**Nomura**) March 28, 2022 First Amended Complaint in case no. 1CCV-21-0000982, which was filed in the Circuit Court of the First Circuit (**circuit court**).[1] The First Amended Complaint alleged claims against Defendants-Appellees Association of Apartment Owners of the Iolani Court Plaza, Inc. (**AOAO**), Valentin Semenov and Inessa Semenov (together, the **Semenovs**), and Burt Louis

---

[1] The Honorable Dean E. Ochiai presided.

2

Johnson and Evelyn Gong Johnson (together, the **Johnsons**) (collectively, the **Defendants**).

### I. BACKGROUND

#### A.   First Amended Complaint

Nomura owns Unit 3201 in the Iolani Court Plaza Building (**ICP**).  The Semenovs were the prior owners of Unit 3301, which is the apartment unit directly above Unit 3201.  In September 2019, the Semenovs replaced the flooring in Unit 3301 with "vinyl flooring with an acoustical underlayment" (the **new Unit 3301 flooring**).  In 2021, the Semenovs sold Unit 3301 to the Johnsons with the new Unit 3301 flooring installed.

On March 28, 2022, Nomura filed his operative First Amended Complaint against Defendants, alleging that the installation of the new Unit 3301 flooring disrupted his quiet enjoyment of Unit 3201.  The First Amended Complaint requested declaratory and injunctive relief against all Defendants (**Count I**), on the grounds that the AOAO violated Hawaii Revised Statutes (**HRS**) Chapters 514B (**Count II**) and 480 (**Count VII**)[2] and breached its fiduciary and common law duties (**Count III**), and that Defendants' conduct constituted a nuisance (**Count IV**).  Nomura also sought an award of general, special, treble, and punitive damages, and attorneys' fees and costs.

---

[2]    There is no Count V and Count VI in the First Amended Complaint.

In April 2022, the Johnsons filed a cross-claim against the Semenovs, alleging that any damages to Nomura resulted from the Semenovs' negligence, and seeking indemnity and/or contribution from the Semenovs. The Semenovs moved to dismiss Nomura's First Amended Complaint, or in the alternative, for summary judgment. In December 2022, the circuit court granted the Semenovs' motion in part, and dismissed Nomura's Count I claim against the Semenovs.

**B.    Settlement Between Nomura and the Semenovs**

The Semenovs made an "Offer of Settlement Pursuant to Rule 68 of the Hawaii Rules of Civil Procedure" (**Settlement Offer**) to Nomura in December 2023. The Semenovs offered Nomura $30,000 in exchange for, inter alia, Nomura's execution of "a standard Joint Tortfeasor Release and Settlement Agreement" and a "Stipulation for Partial Dismissal [w]ith Prejudice of All Claims Against the Semenovs." By its terms, the Settlement Offer was "subject to the [circuit court's] approval of a Petition for Finding of Good Faith Settlement," and provided that the Settlement Offer "shall not compromise or be construed to compromise [Nomura's] ability to prosecute his claims against any other parties named herein." Nomura accepted the Settlement Offer, and the Semenovs withdrew their December 2023 motion for partial summary judgment.

On January 16, 2024, the Semenovs filed their "Petition for Determination of Good Faith Settlement" (**Petition**), and a sealed copy of the "Settlement and Release Agreement" (**Release Agreement**) executed by Nomura and the Semenovs.  The circuit court heard and orally denied the Semenovs' Petition on January 18, 2024.

Nomura prematurely filed his first appeal, challenging the circuit court's oral ruling, creating case no. CAAP-24-0000055.

On April 30, 2024, the circuit court issued the "Order Denying [the Semenovs'] [Petition]" (**Settlement Order**).  Nomura appealed the Settlement Order, creating case no. CAAP-24-0000351.

### C.    Motion for Summary Judgment (MSJ) Orders

In December 2023, the Johnsons, the Semenovs, AOAO, and Nomura filed separate motions for summary judgment.[3]  The circuit court heard the motions on January 18, 2024.  On March 14, 2024, the circuit court entered: (1) "Findings of Fact, Conclusions of Law, and Order Granting [AOAO's] [MSJ] [Dkt. 275]" (**AOAO MSJ Order**); (2) "Order Granting in Part and Denying in Part [the Johnsons'] [MSJ]" (**Johnsons MSJ Order**); and (3) "Order Denying [Nomura's] Motion for Partial Summary Judgment

---

[3]     The Semenovs withdrew their MSJ after Nomura agreed to their Settlement Offer.

Against Defendants on Counts [I] and II of [Nomura's] First Amended Complaint, Filed March 28, 2022 [Dkt. 52]" (**Nomura MSJ Order**).

Nomura prematurely appealed from the AOAO MSJ Order, creating case no. CAAP-24-0000294.

The AOAO moved for (1) certification of judgment in its favor, and against Nomura, pursuant to Hawaiʻi Rules of Civil Procedure Rule 54(b), and (2) costs pursuant to HRS § 607-9 (2016), and based on the AOAO MSJ Order.

On May 30, 2024, the circuit court entered its "Order Granting: (1) Motion for Award of Taxable Costs and Rule 54(b) Certification of Judgment in Favor of [AOAO] and Against [Nomura] [Dkt. 511]; and (2) [the Johnsons'] Substantive Joinder to [AOAO's] 'Motion for Award of Taxable Costs and Rule 54(b) Certification of Judgment in Favor of [AOAO] and Against [Nomura]' [Dkt. 521]" (**Certification Order**), and "Rule 54(b) Final Judgment" (**Final Judgment**).

Nomura appealed from the Final Judgment, which incorporated the AOAO MSJ Order, Johnsons MSJ Order, Nomura MSJ Order, and Certification Order, creating case no. CAAP-24-0000420.

## II. POINTS OF ERROR

### A. CAAP-24-0000420

In case no. CAAP-24-0000420, Nomura raises seven points of error, contending that the circuit court erred in: (1 & 2) granting the AOAO and the Johnsons' MSJs because it incorrectly interpreted the plain language of the AOAO's governing documents; (3) "refusing to consider the exhibits/ testimony submitted by [Nomura]" and "finding that the evidence of the encumbrance agreement was precluded as a subsequent remedial measure"; (4) "denying [e]stoppel against the AOAO and/or to find a genuine issue of material fact based on the AOAO prosecuting other owners for installing the same or substantially similar 'tile' flooring which was the precise complaint raised by [Nomura] in the present case"; (5) "granting the AOAO's and the Johnsons' [MSJs] for injunctive relief"; (6) "denying [Nomura's] [MSJ] where the evidence unequivocally showed the violation of the House Rules of the AOAO by the Defendants"; and (7) "dismissing [Nomura's] nuisance claim against the AOAO, and the injunctive relief claims based on nuisance against the Johnsons and the AOAO."

### B. CAAP-24-0000351

In case no. CAAP-24-0000351, Nomura raises six points of error, contending that the circuit court erred in: (1)

"denying the [Petition]" and determining that "the [R]elease [A]greement submitted with the Petition . . . was a valid and binding agreement"; (2) concluding that the Release Agreement was valid without a good faith determination "notwithstanding the [Settlement Offer]"; (3) "denying the [Petition] exclusively on 'factor No. 5' the 'relative degree of fault'"; (4) "setting the hearing on the [Petition] only two days after the Petition was filed and allowing the Johnsons to file a Memorandum in Opposition the same day as the hearing"; (5) "finding a binding [R]elease [A]greement where the [Semenovs'] signatures on the release . . . were apparently made . . . in violation of the Uniform Electronic Transactions Act . . . and the plain language of the release"; and (6) "finding the release was binding and required indemnification of the Johnsons' crossclaim where genuine issues of material fact existed that the release was not binding."

### III. STANDARDS OF REVIEW

**A.    Summary Judgment**

We review the circuit court's grant or denial of summary judgment de novo, applying the same standard applied by the circuit court:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is **no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.** A fact is

material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Hilo Bay Marina, LLC v. State, 156 Hawaiʻi 478, 486, 575 P.3d 568, 576 (2025) (emphasis added) (citation omitted).

B.    Evidentiary Rulings

We review the circuit court's evidentiary ruling de novo under the right/wrong standard. Ranches v. City & Cnty. of Honolulu, 115 Hawaiʻi 462, 468, 168 P.3d 592, 598 (2007).

C.    Conclusions of Law

We review the circuit court's conclusions of law de novo under the right/wrong standard. Troyer v. Adams, 102 Hawaiʻi 399, 409, 77 P.3d 83, 93 (2003).

D.    Statutory Interpretation

We review the circuit court's interpretation of a statute de novo under the right/wrong standard. Id.

E.    Determination of Good Faith Settlement

We review the circuit court's determination of whether a settlement was in good faith, under HRS § 663-15.5 (2016), for abuse of discretion. Id. at 427, 77 P.3d at 111.

F.    Settlement Agreements

"A trial court's determination regarding the enforceability of a settlement agreement is a conclusion of law

reviewable de novo."  Buscher v. Boning, 114 Hawai‘i 202, 211, 159 P.3d 814, 823 (2007) (cleaned up).

## IV. DISCUSSION[4]

### A.   CAAP-24-0000420

(1) **The AOAO Governing Documents**.  Nomura contends that the circuit court erred in granting summary judgment in favor of the AOAO and the Johnsons as to Counts I and II, due to its incorrect interpretation of the AOAO's governing documents. The AOAO governing documents consist of the: (1) "Second Restated Declaration of Condominium Property Regime of the [ICP]" (**Declaration**); (2) "Second Restated By-Laws of [the AOAO]" (**By-Laws**); and (3) "[ICP] [AOAO] House Rules" (**House Rules**).  (Footnote omitted.)

The AOAO's governing documents "serve as a contract between the condominium owners and the [AOAO]."  See Harrison v. Casa de Emdeko, Inc., 142 Hawai‘i 218, 226, 418 P.3d 559, 567 (2018) (citation omitted).  We therefore interpret the terms of the governing documents "according to their plain, ordinary, and accepted sense in common speech."  Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai‘i 36, 45, 305 P.3d 452, 461 (2013) (citation omitted).

---

4        We reorder and reorganize Nomura's points of error herein.

The Declaration provides that each apartment unit includes "all of the walls and partitions which are not load-bearing within its perimeter walls, the inner decorated or finished surfaces of all walls, floors, and ceilings, and all fixtures contained or installed therein."

The By-Laws provide, in relevant part:

> 16.  Board Powers, Exclusive; Obligations of Apartment Owners. . . .  Each Owner shall have the duty and obligation at his sole cost and expense to maintain and repair his own apartment. **Each Owner shall have the right to paint, paper, panel, plaster, tile, and finish the interior surface of the** ceilings, **floors**, window frames, door frames, trim, and the perimeter walls **of the Unit** and the surface of the bearing walls located within said Unit. **Said Owners shall also have the right to substitute new finished surfaces for the finished surfaces then existing on said ceilings, floors and walls.**  Said Owners and their agents have the right to maintain, repair, paint, finish, alter, substitute, add or remove any fixtures attached to said ceilings, floors, or walls.
>
> This paragraph shall not be construed, however, as permitting any Owner to [do] any work which could jeopardize the soundness or safety of the property, reduce the value thereof, or impair any easement or hereditament[.]

(Emphasis added.)

And of particular relevance here, the House Rules provide that "[o]wners installing tile or hard wood floors are required to install noise insulation materials adequate to prevent sound transference to the apartments below" (**Tile/Wood Floor House Rule**).  The AOAO and the Johnsons contend that the Tile/Wood Floor House Rule does not apply because the Semenovs installed *vinyl flooring*, and the Tile/Wood Floor House Rule does not apply to vinyl flooring.  Nomura contends that the

Semenovs installed *vinyl tile flooring*, and the Tile/Wood Floor House Rule applies to vinyl tile flooring.[5]

The record reflects a genuine issue of material fact as to whether the Semenovs installed "tile" or "vinyl tile" flooring in Unit 3301. The AOAO's expert reported that the Semenovs installed "luxury vinyl tile." The Johnsons' acoustic expert "assumed" the flooring was "[l]uxury [v]inyl [p]lank."

Moreover, the governing documents do not define "tile" or "hardwood," they do not specifically address "vinyl," and they do not distinguish between vinyl tile and tile.[6] Therefore, it is not clear from the plain language of the House Rules whether the Tile/Wood Floor House Rule applies to the specific type of flooring that the Semenovs installed. See Hawaiian Ass'n of Seventh-Day Adventists, 130 Hawaiʻi at 45, 305 P.3d at

---

[5] In the underlying proceeding, Nomura argued that the new Unit 3301 flooring is "hardwood"; on appeal, Nomura argues that the new Unit 3301 flooring is "tile." Nomura's argument on appeal is "substantially similar" to his argument before the circuit court and, therefore, has been "sufficiently preserved" for appeal. See Enoka v. AIG Haw. Ins. Co., 109 Hawaiʻi 537, 547, 128 P.3d 850, 860 (2006) (citation omitted).

[6] We note that "tile" is commonly defined as "a flat or curved piece of fired clay, stone, or concrete used esp. for roofs, floors, or walls and often for ornamental work," or "a thin piece of resilient material (as cork, linoleum, or rubber) used esp. for covering floors or walls." Tile, Merriam-Webster's Collegiate Dictionary (11th ed. 2020). "[H]ardwood" is commonly defined as "the wood of an angiospermous tree as distinguished from that of a coniferous tree." Hardwood, Merriam-Webster's Collegiate Dictionary (11th ed. 2020). "[V]inyl" is commonly defined as "a polymer of a vinyl compound or a product (as a resin or a textile fiber) made from such a polymer," Vinyl, Merriam-Webster's Collegiate Dictionary (11th ed. 2020), and is "often used before another noun," such as "*vinyl* tiles/flooring," Vinyl, Merriam-Webster, https://www.merriam-webster.com/dictionary/vinyl (last visited June 12, 2026).

461 ("A contract is ambiguous when its terms are reasonably susceptible to more than one meaning." (citation omitted)).

Where the movant does not bear the burden of proof at trial, as here, the "movant may demonstrate that there is no genuine issue of material fact by either: (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry his or her burden of proof at trial." Ralston v. Yim, 129 Hawai'i 46, 57, 292 P.3d 1276, 1287 (2013) (citation omitted).

The AOAO and the Johnsons did not meet their burden on summary judgment of "presenting evidence negating an element of [Nomura's] claim" or "demonstrating that [Nomura] will be unable to carry his . . . burden of proof at trial." See id. at 56-57, 292 P.3d at 1286-87 (citation omitted) ("[W]e must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion. (citation omitted)).

We therefore conclude that the circuit court erred in granting summary judgment in favor of the AOAO and the Johnsons on Counts I and II of the First Amended Complaint.

(2) **Encumbrance Agreements.** Nomura contends that the circuit court "erred in refusing to consider the exhibits/

testimony" -- namely, the encumbrance agreements[7] -- "submitted by [Nomura] in opposition to [the AOAO and the Johnsons'] [MSJs]."

The Semenovs installed the new Unit 3301 flooring in 2019. The AOAO began requiring unit owners to sign encumbrance agreements in 2021. "Events occurring after a contested event are generally not relevant." State v. Ortiz, 93 Hawaiʻi 399, 408, 4 P.3d 533, 542 (App. 2000) (citation omitted); see also Hawaii Rules of Evidence Rule 407 ("When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.").

We conclude the circuit court was not wrong in determining that the encumbrance agreements were "totally irrelevant to the facts as they took place at the time of the renovations" considering that the AOAO did not require encumbrance agreements "at the time in which the Semenovs did their flooring renovation."

---

[7] Encumbrance agreements are agreements entered into between the AOAO and unit owners who wish to make modifications within their apartment unit. An encumbrance agreement includes the unit owner's representation that they have sought consent from the AOAO Board of Directors (**Board**) to make certain alterations to their unit, and it lists the conditions that must be satisfied to receive the Board's approval to make the requested alterations.

(3) **Nuisance.**  Nomura contends that the circuit court erred in granting summary judgment in favor of the AOAO as to Nomura's Count IV nuisance claim.

Nuisance is a tort claim that would here require Nomura to show that the AOAO's conduct "is a legal cause of an invasion of [Nomura's] interest in the private use and enjoyment" of his apartment unit.  Restatement (Second) of Torts § 822 (A.L.I. 1979).  "The conduct necessary to make the actor liable for either a public or a private nuisance may consist of (a) an act; or (b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate . . . the invasion of the private interest."  Id. § 824.

We concluded, in section IV.A.(1) supra, that there exists a genuine issue of material fact as to whether the Tile/Wood Floor House Rule applies to the installation of the new Unit 3301 flooring such that its installation constituted a breach of the AOAO's governing documents.  See Malabe v. Ass'n of Apartment Owners of Exec. Ctr., by and through its Bd. of Dirs., 147 Hawaiʻi 330, 356, 465 P.3d 777, 803 (2020) ("[A] condominium's governing documents are contractual obligations between the condominium association and a condominium owner.").

The question of whether the AOAO breached its governing documents is separate, however, from the question of

whether the AOAO committed the tort of nuisance. Even assuming, arguendo, that the AOAO breached the governing documents, that breach would not establish that the AOAO's conduct was a legal cause of the invasion of Nomura's use and enjoyment of Unit 3201. Nomura has not introduced evidence that would establish the AOAO has any responsibility to mitigate or control the noises allegedly coming through Unit 3301's flooring and into Unit 3201.

We therefore affirm the circuit court's summary judgment in favor of the AOAO on Nomura's nuisance claim.

(4) **Injunctive Relief.** Nomura contends that the circuit court erred by granting summary judgment in the AOAO and the Johnsons' favor on his claims for injunctive relief (Count I). "Injunctive relief is not an independent cause of action but a remedy to other causes of action." Greenspon v. Deutsche Bank Nat'l Tr. Co., No. CAAP-13-0001432, 2016 WL 3280366, at *7 (Haw. App. June 14, 2016) (mem. op.) (citation omitted). Here, injunctive relief is a potential remedy for Nomura's nuisance claims; among other things, Nomura seeks the replacement of Unit 3301's flooring.[8] In light of section IV.A.(3), supra, we affirm the circuit court's summary judgment of Nomura's claim for

---

[8] Finding of fact 7 of the AOAO MSJ Order states that "[Nomura's] claims in this action are predicated on the assertion that the vinyl flooring with acoustical underlayment installed in [Unit] 3301 . . . must . . . be torn out and replaced with carpet."

16

injunctive relief in favor of the AOAO. Because Nomura's nuisance claim against the Johnsons remain pending, we vacate the summary judgment of Nomura's claim for injunctive relief in favor of the Johnsons.

(5) **Breach of Fiduciary Duty.** Nomura contends that the circuit court erroneously granted summary judgment in favor of the AOAO on Nomura's claims for breach of fiduciary duty (Count III) and violation of HRS Chapter 480[9] (Count VII). Nomura's contentions lack merit.

With regard to Count III, Nomura does not cite authority establishing that he has a cognizable claim against the AOAO for breach of fiduciary duty. We are unaware of such authority. See Ass'n of Apartment Owners of 2987 Kalakaua, by its Bd. of Dirs. v. Dubois, No. 27416, 2008 WL 3199461, at *1 (Haw. App. Aug. 7, 2008) (SDO) ("[Defendant] has failed to provide authority for his position that the [AOAO] itself, as opposed to individual directors of the board, can be held responsible for a breach of fiduciary duty." (citation omitted)).

With regard to Count VII, Nomura did not oppose the AOAO's MSJ, nor did he argue that he was entitled to judgment as a matter of law in his own MSJ. Nomura's argument, made for the

---

[9] HRS Chapter 480 governs claims alleging unfair or deceptive acts or practices.

17

first time on appeal, is therefore waived. See Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal." (citations omitted)).

The circuit court did not err in granting summary judgment in the AOAO's favor on Counts III and VII.

(6) **Estoppel.** Nomura contends that the circuit court erred in rejecting Nomura's estoppel argument, and that the AOAO was estopped from claiming that the new Unit 3301 flooring did not violate the AOAO governing documents because it "prosecut[ed] other residents for . . . changing their flooring [and] installing tile flooring without written Board approval, and . . . [for] lack of adequate soundproofing."

Nomura appears to be invoking the doctrine of judicial estoppel. Under the doctrine of judicial estoppel, "a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action." Roxas v. Marcos, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (cleaned up).

Nomura does not, however, point to any prior judicial or administrative proceeding, of which the AOAO was a party, in which the AOAO "assert[ed] a position that is factually incompatible" with its present litigation position.  See Langer v. Rice, No. 29636, 2013 WL 5788676, at *5 (Haw. App. Oct. 28, 2013) (mem. op.).[10]

We conclude the circuit court was not wrong in rejecting Nomura's judicial estoppel argument.

.    .    .

In light of the above, we resolve the points of error raised in case no. CAAP-24-0000420 by vacating the Nomura MSJ Order, and affirming in part, and vacating in part, the AOAO MSJ Order and Johnsons MSJ Order.  We also vacate the Certification Order in part, to the extent it awarded $7,247.13 in costs to the AOAO pursuant to HRS § 607-9.

---

[10]     The following elements must be established before the circuit court can apply judicial estoppel:

> (1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding;
>
> (2) the prior inconsistent position must have been accepted by the tribunal; and
>
> (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage.

Langer, 2013 WL 5788676, at *5 (cleaned up).

B.   CAAP-24-0000351

(1) **Good Faith Settlement.**   In determining whether the parties entered into a settlement agreement in good faith, pursuant to HRS § 663-15.5, the circuit court considers the following factors "to the extent that they are known at the time of settlement":

> (1) the type of case and difficulty of proof at trial[;] . . . (2) the realistic approximation of total damages that the plaintiff seeks; (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial; (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

Troyer, 102 Hawaiʻi at 427, 77 P.3d at 111.   Nomura contends that the circuit court "erred in denying the [Petition] exclusively on 'factor No. 5' the 'relative degree of fault'."

Troyer instructs that "the determination of whether a settlement is in good faith" is left "to the sound discretion of the trial court in light of the totality of the circumstances surrounding the settlement" and "the trial court may consider the [Troyer] factors to the extent that they are known at the time of settlement."   Id.

The circuit court applied and considered the Troyer factors, as follows:

20

THE COURT: All right. The Court -- I think this may be the first time ever that the Court is not going to sanction a settlement as a good faith settlement.

**I have reviewed [Troyer] ad nauseum, and paragraph -- Factor No. 5 keeps coming back to me. And that is the relative degree of fault of the settling tortfeasors.**

In this case, the Semenovs created the condition for which [Nomura] wants damages and injunctive relief. [The] Johnsons were good faith purchasers. They did not counterclaim or crossclaim against the Semenovs for a UDAP claim or anything other than Defendant indemnify us on the crossclaims -- on the claims that are being presented by [Nomura].

So in terms of the relative degree of fault of the settling tortfeasors, the Court finds that it would be very unjust and inequitable to allow the Semenovs to have the Court's blessing of a good faith settlement.

(Emphasis added.)

The circuit court is not required to apply every Troyer factor when determining whether a settlement was made in good faith. See Befitel v. Lyckman, No. 30691, 2013 WL 1131612, at *2 (Haw. App. Mar. 18, 2013) (mem. op.) ("[W]e conclude that [the appellant] incorrectly asserts that the circuit court *must* apply each of the [Troyer] factors in determining that a settlement was made in good faith." (citation omitted)). Here, the circuit court gave meaningful consideration to the circumstances surrounding the settlement and, in particular, the relative degree of fault of the Semenovs and Johnsons. The circuit court explained that, because the Semenovs "created the condition" that gave rise to Nomura's claims, it would be "unjust and inequitable" to certify a good faith settlement that would dismiss the Johnsons' cross-claim for indemnity.

On this record, we conclude that the circuit court did not abuse its discretion in denying the Petition.

(2) **Points of Error Relating to the Release Agreement.** Nomura raises several points of error relating to the circuit court's determination that the Release Agreement was a valid and binding agreement between Nomura and the Semenovs.

Nomura contends that the Release Agreement was conditioned on the circuit court's good faith determination, and that the Release Agreement was therefore not valid and binding without certification of a good faith settlement. We agree. Although the Release Agreement "supersede[d] all prior and contemporaneous agreements," it expressly conditioned the settlement on the parties' "good faith within the meaning of . . . HRS § 663-15.5."[11] After determining that Nomura and the

---

[11] Paragraph 10 of the Release Agreement provides, in relevant part:

    e.    <u>Merger and Amendments.</u> **This [Release] Agreement contains the entire agreement between [Nomura and the Semenovs] and supersedes all prior and contemporaneous agreements and understandings in connection therewith.** This [Release] Agreement shall not be altered, amended, modified or otherwise changed in any respect, or particular whatsoever, except in a writing duly executed by [Nomura and the Semenovs]. [Nomura and the Semenovs] acknowledge and agree that they will make no claim, at any time or place, that this [Release] Agreement has been orally altered or modified in any respect whatsoever.

    . . . .

    w.    <u>Good Faith.</u> [Nomura and the Semenovs] covenant and agree that **this [Release] Agreement and the settlement reflected herein were made and entered into in good faith within the meaning of** [HRS] Chapter 663, as amended by Act

(continued . . .)

Semenovs did not enter into a good faith settlement within the meaning of HRS § 663-15.5, it was irreconcilably inconsistent for the circuit court to uphold the Release Agreement. We thus conclude that the circuit court erred in determining the Release Agreement to be valid and enforceable.

Nomura also contends that the circuit court was required to hold a separate hearing before it could determine that the Release Agreement was valid and binding, and that the Semenovs' signatures on the Release Agreement were improper. We decline to address these contentions in light of our conclusion that the Release Agreement is not enforceable.

Lastly, Nomura contends the circuit court erred in concluding that the Release Agreement "required indemnification of the Johnsons' crossclaim" when "[t]here is no indemnity or defense requirement of [Nomura] as to the Johnson[s'] crossclaim against the Semenovs under the [R]elease [Agreement]." In light of our conclusion that the Release Agreement is not enforceable, we vacate the circuit court's determination that the Release Agreement required Nomura to indemnify the Semenovs against the Johnsons' cross-claim.

---

[11](. . . continued)
300 of the 2001 Session Laws of Hawaii as codified in **HRS § 663-15.5.**

(Emphasis added.)

(3) **Timing of Petition Hearing.** Nomura contends the circuit court "erred in setting the hearing on the [Petition] only two days after the Petition was filed and allowing the Johnsons to file a Memorandum in Opposition the same day as the hearing," which resulted in Nomura having insufficient time to respond.

The circuit court has "the authority to set a reasonable time limit for trials and hearings . . . [and has] inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them." Doe v. Doe, 98 Hawaiʻi 144, 154-55, 44 P.3d 1085, 1095-96 (2002) (citation omitted). Rules of the Circuit Courts of the State of Hawaiʻi (**RCCH**) Rule 7(a) provides that, as a general matter, "motion[s] shall be filed and served on all parties not less than 18 days before the date set for the hearing." RCCH Rule 7(f) states that "[u]nless otherwise ordered for **good cause** shown, all pretrial motions that request entry of judgment or dismissal of any claim shall be filed not later than 50 days prior to the assigned trial date." (Emphasis added.)

On January 16, 2024, the Semenovs filed an "Ex Parte Motion to Shorten Time for Hearing on [the Semenovs'] [Petition]," which the circuit court granted. Counsel for the Semenovs declared that they "inquired with counsel as to whether

any party would object to the Semenovs' request that the Semenovs' forthcoming [Petition] be heard on an expedited basis in light of the forthcoming pretrial deadlines and trial date" and counsel declared that "[n]o party objected to an expedited hearing."

Moreover, RCCH Rule 7.2(g)(5)(A) states that the "grant or denial [of a motion to shorten time for hearing] shall not be subject to review or reconsideration," and that "[i]f granted, the date and time for the hearing shall be indicated on the order."

The circuit court did not abuse its discretion in setting the hearing on the Petition.

. . . .

In light of the above, we resolve the points of error raised in case no. CAAP-24-0000351 by affirming in part, and vacating in part, the Settlement Order.[12]

## V. CONCLUSION

For the foregoing reasons, we vacate the Nomura MSJ Order and Final Judgment. We affirm in part, and vacate in part, the Johnsons MSJ Order, AOAO MSJ Order, Settlement Order, and Certification Order. We remand for further proceedings consistent with this memorandum opinion.

---

[12]    We note Nomura represents on appeal that the settlement check was not deposited, and that his counsel returned the check to the Semenovs.

**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Pursuant to Hawaiʻi Rules of Appellate Procedure Rule 34(c), Nomura's May 6, 2026 Notice of Retention of Oral Argument, which we construe as a motion, is denied.

DATED: Honolulu, Hawaiʻi, June 23, 2026.

On the briefs:

Paul V.K. Smith,
for Plaintiff-Appellant.

John D. Zalewski,
for Defendant-Appellee
Association of Apartment
Owners of the Iolani Court
Plaza, Inc.

Lahela H.F. Hite,
for Defendants-Appellees
Valentin Semenov and
Inessa Semenov.

Erin I. Macdonald,
for Defendants-Appellees
Burt Louis Johnson and
Evelyn Gong Johnson.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge